UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NOEL CIAPPETTA,

                       Plaintiff,

        -against-

BARRY SNYDER, PGD IV LLC and PGT
TRUCKING, INC.,

                    Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 15-4427 (JMA)(ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiff Noel Ciappetta ("Plaintiff") brings this diversity action against Defendants Barry

Snyder, PGD IV LLC and PGT Trucking, Inc. (collectively "Defendants") for injuries sustained

as a result of a motor vehicle accident occurring on November 19, 2014 in Nassau County.

Before the Court, on referral from Judge Azrack, is Defendants' motion for summary judgment.

ECF No. 87.  Defendants move for summary judgment on the grounds that Plaintiffs has failed to

present evidence of a "serious injury" as required by § 5104(a) and defined in § 5102(d) of the

New York Insurance Law, commonly referred to as the "No-Fault" Law.  For the reasons set

forth below, the undersigned respectfully recommends that Defendants' motion be granted.

## BACKGROUND

### I.    Procedural History

      Plaintiff originally filed the complaint in this action in New York State Court on April 24,

2015.  At the time the lawsuit was commenced Plaintiff was represented by counsel.  Defendants

filed a verified answer to the complaint in state court on June 15, 2015.  On June 17, 2015, the

action was removed to the United States District Court for the Southern District of New York.

By Order dated June 25, 2015 this matter was transferred to the United States District Court for

the Eastern District of New York, on the basis of improper venue.  Plaintiff's counsel moved to

withdraw as counsel on the grounds that Plaintiff had threatened him with bodily harm, and the motion was granted on May 16, 2017.  ECF No. 18.

On May 21, 2020, Defendants moved for summary judgment.  Defendants argue that it is impossible for a rational jury to find that Plaintiff sustained a "serious injury" as defined by Insurance Law § 5102 and therefore, Plaintiff's complaint should be dismissed.  In support of the motion Defendants submit the Declaration of Thomas V. Backis, dated March 5, 2020, attaching over 800 pages of medical records ("Backis Dec.").  In response, Plaintiff filed three letters on ECF on March 9, 2020, April 30, 2020 and May 6, 2020.  These letters do not respond to Defendants' arguments that Plaintiff did not sustain a "serious injury" as defined by New York Insurance Law §5102(d) and fail to provide any counter evidence in opposition to Defendants' motion for summary judgment.  Indeed, Plaintiff contends that Defendants' evidence in support of summary judgment is "the same bullcrap no details involving me almost getting killed or me going on fire and ending my life at 62 years old."  ECF No. 83.  Plaintiff also contends that he sent medical records to Defendants on March 5, 2020, the same day he was served with Defendants' motion for summary judgment.  *Id.*  Defendants have submitted a letter in reply in lieu of a formal reply memorandum, indicating they are not in receipt of any additional medical records of Plaintiff.  ECF No. 93.

By Order dated September 30, 2020, Judge Azrack referred the motion to the undersigned.

II.    **Local Rule 56.1 and Pro Se Litigants**

Plaintiff has failed to provide a proper opposition to Defendants' motion for summary judgment.  "Local Civil Rule 56.1(a) requires the moving party to submit a 'short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends

there is no genuine issue to be tried.'" *Allah v. Annucci*, No. 16-CV-1841, 2020 U.S. Dist. LEXIS 101590, 2020 WL 3073184, at *11 (S.D.N.Y. June 10, 2020) (quoting Local Civ. R. 56.1(a)). "The nonmoving party, in turn, must submit 'a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.'" *Id.* (quoting Local Civ. R. 56.1(b)). "Pro se litigants who receive proper notice pursuant to Local Civil Rule 56.2 are not excused from satisfying their obligations under Local Civil Rule 56.1." *Santagata v. Diaz*, No. 17-CV-3053, 2020 U.S. Dist. LEXIS 55047, 2020 WL 1536347, at *4 (E.D.N.Y. Mar. 30, 2020) (quoting *Cain v. Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016) (citation omitted), aff'd sub nom. *Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8 (2d Cir. 2018)). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).

Here, Defendants filed and served their Statement pursuant to Rule 56.1, and, filed and served a statement notifying Plaintiff of the potential consequences of not responding to the motion, as required by Local Rule 56.2. Plaintiff did not provide the required 56.1 Statement. Plaintiff's only response is unsworn and contains no factual allegations supported by admissible evidence in the record to refute Defendants' version of purportedly undisputed facts. Where a party opposing a motion for summary judgment fails to submit a proper Counterstatement, the facts set forth in a moving party's Rule 56.1 statement are generally deemed to be admitted, and in this case, the Court has applied that rule. *See Brandever*, 2014 U.S. Dist. LEXIS 36844, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1

3

statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. New York State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 U.S. Dist. LEXIS 126925, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same). However, mindful of the fact that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), the undersigned has also undertaken a comprehensive, independent review of the record. As such, in instances where the Court has found no support for Defendants' factual assertions, those averments have been disregarded. Nonetheless, the facts that follow are construed in the light most favorable to the non-moving party, except as otherwise noted. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

### III.    Factual Background

Plaintiff is seeking to recover for personal injuries allegedly sustained as a result of a motor vehicle accident that occurred on the Long Island Expressway on at approximately 5:30 a.m. on November 19, 2014. Def. Local Rule 56.1 Stmt. at ¶ 2.

#### A.  The Parties

Plaintiff Noel Ciappetta, was 62 years old at the time of the accident. He has not been employed since 1992 and has been receiving Social Security Disability as a result of an injury received in an automobile accident. *Id* at ¶¶ 1, 29, 30. Defendant Barry Snyder is an employee of Defendant PGT Trucking, Inc. and was the operator of a vehicle involved in the accident with Plaintiff. Comp. ¶16, ECF No. 1. Defendant PGD IV LLC is a Pennsylvania limited liability company. Def. Ans. ¶ 3, ECF No. 1. Defendant PGT Trucking, Inc. is foreign corporation. *Id.* at ¶ 4.

#### B.  Plaintiff's Prior Accidents and Social Security Disability Claim

Plaintiff testified that he sustained a "pinched nerve" in his back prior to the subject accident. *Id* at ¶ 25.  Plaintiff testified that he had fallen off a ladder while working as a roofer in the late 1980's. The ladder had slid out and he fell approximately 4-5 feet to the ground. According to Plaintiff, he did not sustain an injury to his back or neck as a result of that accident. *Id* at ¶ 26.

In addition, Plaintiff started receiving Social Security Disability following a motor vehicle accident in 1992, when a vehicle he was operating was sideswiped by another vehicle. *Id* at ¶ 27.  Plaintiff went to our Lady of Mercy Hospital on either the same day or next day following the 1992 accident. *Id* at ¶ 28. Plaintiff testified that he did not go to the hospital because he was experiencing pain, but because that's what his lawyer told him to do.  *Id* at ¶ 29.

Plaintiff received treatment to his back from a Dr. Robert Fogelman "for a couple of months" following the 1992 accident. *Id* at ¶ 30. Plaintiff also treated with a doctor in Stuart, Florida in connection with his 1992 accident. Plaintiff treated with the doctor in Florida 2-3 times per week for approximately one year.  *Id* at ¶ 31. Plaintiff filed a lawsuit in connection with the 1992 accident claiming that he had a "pinched nerve" as a result of the 1992 accident. *Id* at ¶¶ 33, 34.  Plaintiff filed a claim for social security disability benefits in 1992 due to a "pinched nerve" in his back. *Id* at ¶ 36.  Plaintiff testified that "[a]fter my settlement [of the 1992 lawsuit], I started playing basketball, doing everything normally, doing everything normally before this accident." *Id* at ¶ 35.  Plaintiff testified that the pinched nerve did not prevent him from doing anything as of the time that he filed the claim for Social Security Disability benefits. *Id* at ¶ 37.

### C.  Plaintiff's Medical Treatment for This Accident

Plaintiff alleges that he sustained an aggravation of the pre-existing injury to the lumbar spine as a result of the accident, and multiple disc herniations and bulges in the cervical and lumbar regions of his spine. Def. Local Rule 56.1 Stmt. at ¶ 3.  Plaintiff went from the accident scene to Syosset Long Island Jewish Medical Center by ambulance; he was there for approximately two hours.  *Id* at ¶ 4.   Plaintiff also went to see an attorney on the same date of the accident, and the attorney referred Plaintiff to spinal surgeon Dr. Aaron Rovner.  *Id* at ¶ 5.

### 1. Physical Therapy

Plaintiff started receiving physical therapy immediately after the accident.  *Id* at ¶ 6. Plaintiff's records from Physical Medicine and Rehabilitation of New York indicate that he first went there on November 20, 2014.  His complaints were of neck pain, lower back pain and rib pain. The records indicate that Plaintiff received physical therapy there on 60 dates from November 20, 2014 through July 24, 2015.  *Id* at ¶ 7. MRI studies of the cervical and lumbar regions of Plaintiff's spine were performed at Stand Up MRI of Manhattan on November 24, 2014.  *Id* at ¶ 8.

In January 2015, the physical therapy reports indicated "of note, the patient had chronic low back pain prior to this accident which at baseline he rated as a 3 out of l0, and he, was on disability for it."  Backis Dec. Exhibit H.  Additionally, the report noted the following:

> Cervical Spine: Flexion 50 degrees (normal 50 degrees), extension 60 degrees (normal 60 degrees), left rotation 80 degrees (normal 80 degrees), right rotation 80 degrees (normal 80 degrees), left side bend 50 degrees (normal 50 degrees), right side bend 50 degrees (normal 50 degrees)
> Lumbar Spine: Flexion 70 degrees (normal 90 degrees), extension 20 degrees (normal 30 degrees), left side bend 25 degrees (normal 25 degrees), right side bend 25 (normal 25 degrees) left rotation 40 degrees (normal 45 degrees), right rotation 40 degrees (normal 45 degrees).
> Range of motion testing was done via an objective hand-held goniometer.

### 2. Dr. Rovner

Plaintiff visited Dr. Rovner on April 2, 2015, and Dr. Rovner recommended spinal fusion surgery at L5-Sl at that visit. *Id* at ¶ 11. Dr. Rovner's medical records indicate he found a diminished range of motion in Plaintiff's lumbar spine. Backis Dec., Exhibit K. Dr. Rovner concluded that Plaintiff was suffering from degenerative disc disease which was causally related to the accident with a reasonable degree of medical certainty. *Id*.

Plaintiff was scheduled for surgery on his lumbar spine by Dr. Rovner at Franklin Hospital on May 27, 2015. However, the surgery was canceled the morning of the scheduled procedure because Plaintiff drank scotch and smoked a marijuana joint on the morning before the surgery was to be performed. Def. Local Rule 56.1 Stmt. at ¶¶ 12, 13. After the surgery was canceled, Plaintiff asserts that the ultimately decided not to go forward with the surgery for personal reasons. *Id* at ¶ 14. Plaintiff testified that he now believes that Dr. Rovner only scheduled the surgery "for the money." *Id*  According to Plaintiff, he came to this belief because he subsequently consulted with approximately seven or eight other doctors, who have all said that Plaintiff should not have surgery. *Id* at ¶¶ 15, 16.

### 3. Drs. Cordiale, Vernon, Goldstein, Agastin, and Camissa

Plaintiff had a single consultation with Dr. Andrew Cordiale of New York Spine Specialists in March 2015, prior to his consultation with Dr. Rovner. Backis Dec., Exhibit H. The consultation report indicates that Plaintiff was complaining of neck and lower back pain with radiation into both upper and lower extremities. *Id*. Dr. Cordiale notes there are restricted ranges of motion and that Plaintiff is suffering from "herniated cervical intervertebral disc; herniated lumbar intervertebral disc." *Id*. Plaintiff was sent home with a soft neck collar. *Id*.

7

Plaintiff had a single consultation with Dr. Vernon of University Orthopedics on June 22, 2015. Backis Dec., Exhibit M. The consultation report states that Plaintiff had complaints of neck and back pain. The report states that Plaintiff had a history of chronic neck and back pain and "would like surgery for secondary gain with financial gain." *Id*. Dr. Vernon recommended against surgery and recommended a home exercise regimen and outpatient physical therapy. Def. Local Rule 56.1 Stmt. at ¶ 17.

Plaintiff had a single consultation with spinal surgeon Michael Goldstein, M.D. on July 6, 2015. Backis Dec., Exhibit R. Plaintiff complained of neck and back pain but "denies any other upper or lower extremity radiculopathy, numbness, paresthesias, or weakness." *Id*. Based upon his clinical examination of Plaintiff and his review of cervical spine and thoracic spine x-rays ordered and reviewed in the office, Dr. Goldstein's report states an impression of disc degeneration at C5-6 and C6-7, thoracic spondylosis, degenerative disc disease at L5-S1, and lateral recess and foraminal stenosis. Def. Local Rule 56.1 Stmt. at ¶18. Plaintiff was referred to pain management. Backis Dec., Exhibit R.

Plaintiff had a single consultation with Michael Agastin, M.D. on August 13, 2015. Backis Dec., Exhibit N. The report states that Plaintiff had a past medical history of lumbar disc disease and five herniated discs. Dr. Agastin's report states that Plaintiff has a "pinched nerve" in his lower back since 1992 secondary to a fall from a roof in the 1970s. Plaintiff was noted to be on Social Security disability since 1992. The report states an impression of the degenerative disc disease in the lumbar spine. The report states that Plaintiff was fixated on having surgery performed. Def. Local Rule 56.1 Stmt. at ¶19.

Plaintiff had a consultation with spinal surgeon Dr. Frank Camissa on November 16, 2015. Backis Dec., Exhibit O. The report states that Plaintiff had subjective complaints of neck

8

and back pain but no neurologic signs or symptoms. Plaintiff did not report any arm or leg pain. *Id.* Dr. Camissa did not see any indication for surgical intervention, and, recommended a nonsurgical course of treatment. Def. Local Rule 56.1 Stmt. at ¶ 20.

### 4. Defendants' Medical Expert – Dr. Yong Kim

Defendants' medical expert Yong Kim, M.D. performed an examination of Plaintiff on October 12, 2017; Dr. Kim is a spinal surgeon. *Id* at ¶ 39. Dr. Kim's report details his review of Plaintiff's medical records and diagnostic images, including a personal review of images from MRI studies of the cervical and lumbar regions of Plaintiff's spine performed at Stand-Up MRl of Manhattan, P.C. on November 23, 2014. *Id* at ¶ 40. Dr. Kim's review of the MRl of Plaintiff's lumbar spine was significant for degenerative disc disease at L5-Sl and L4-5 with a marked collapse of disc space at L5-S1, and a moderate collapse of the disc space at L3-4. There was no evidence of any acute herniations. *Id* at ¶ 41. Dr. Kim's review of the MRl of Plaintiff's cervical spine was significant for degenerative disc disease - severe at C5-6 and C6-7, with the presence of anterior osteophyte complexes with a collapse of disc space. There were no acute disc herniations present. *Id* at ¶ 42.

Based upon Dr. Kim's review of Plaintiff's records, films and clinical examination, Dr. Kim states that Plaintiff sustained a cervical and lumbar strain as a result of the accident, which has resolved. *Id* at ¶ 43. Dr. Kim states that there is no objective evidence of ongoing orthopedic/neurologic issues with respect to the cervical or lumbar regions of Plaintiff's spine. *Id* at ¶ 44.

### D. Plaintiff's Complaints of Pain

While Plaintiff has failed to properly respond to Defendants' motion for summary judgment, he has sent numerous letters to the Court, claiming "he has permanent internal injuries, diseases I never had." ECF No. 96. He also claims his "cervical spine is severely damaged and cannot be repaired" and that he has weakness in his left and right arms. ECF No. 99.

At his deposition, Plaintiff testified that he continues to experience neck and back pain every day. *Id* at ¶ 21. Plaintiff testified that his alleged injuries did not prevent him from doing any of his customary activities in the 30 days after the subject accident. *Id* at ¶ 9. Additionally, Plaintiff testified that his alleged injuries did not prevent him from doing any of his usual activities in the 6 months after the subject accident, even though he had subjective complaints of pain. *Id* at ¶ 10.

Plaintiff testified that the only activities that his alleged injuries completely prevent him from doing is playing basketball, bowling and having a relationship with a woman. *Id* at ¶ 22. However, plaintiff testified that he had not bowled or played basketball for years before the subject accident. *Id* at ¶ 23. As of his last deposition in August 2017, Plaintiff would drive to Atlantic City or Foxwoods Casino in Connecticut every weekend and gamble; he testified that he is a professional card reader. *Id* at ¶ 24.

## DISCUSSION

**I.  Standard of Law**

### A.  **Summary Judgment**

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *see Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (same).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Wright v. Goord,* 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party.  *Matsushita*, 475 U.S. at 586.  Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case."  *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).  However, "the judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo*, 22 F.3d at 1224.

"When the party opposing summary judgment is *pro se*, the Court must read that party's papers liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *Ayazi v.*

11

*United Fed'n of Teachers, Local 2*, No. 99 CV 8222, 2011 WL 888053, at *6 (E.D.N.Y. Mar. 14, 2011) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). "[H]owever, a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Ayazi*, 2011 WL 888053, at *6 (citing *Thompson v. Tracy*, No. 00 CV 8360, 2008 WL 190449, at *5 (S.D.N.Y. Jan.17, 2008)); *Chiari v. N.Y. Racing Ass'n, Inc.*, 972 F. Supp. 2d 346, 361 (E.D.N.Y. 2013).

## DISCUSSION

Plaintiffs' claims are governed by New York's No-Fault Law, "which precludes recovery for non-economic loss arising out of negligence in the use or operation of an automobile except where the claimant has a serious injury." *Jones v. United States*, 408 F. Supp. 2d 107, 115 (E.D.N.Y. 2006) (citing N.Y. Ins. Law § 5102(a) (McKinney 2000)). "New York's No-Fault Law provides that in an action 'for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury.'" *Stephens v. Ford Motor Credit Co.*, No. 00-CV-6394 (DLI)(KAM), 2005 U.S. Dist. LEXIS 34656, at *15-16, 2005 WL 2387589 (E.D.N.Y. Sept. 28, 2005) (quoting N.Y. Ins. Law § 5104). The No-Fault Law defines the term "serious injury" as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). The No-Fault Law was designed to "weed out frivolous claims and limit recovery to significant injuries." *Dufel v. Green*, 84 N.Y. 2d 795, 798, 647 N.E.2d 105, 107,

622 N.Y.S. 2d 900, 902 (N.Y. 1995). Thus, plaintiffs bear the burden of proving that they suffered a serious injury, *Lopez v. United States*, 312 F. Supp. 3d 390, 401 (S.D.N.Y. 2018), and they must present objective medical evidence to support their claims. *Pommells v. Perez*, 4 N.Y.3d 566, 574, 830 N.E.2d 278, 282, 797 N.Y.S.2d 380, 384 (N.Y. 2005); *Toure v. Avis Rent A Car Systems, Inc.*, 98 N.Y.2d 345, 357-58, 774 N.E.2d 1197, 1205, 746 N.Y.S.2d 865, 873 (N.Y. 2002). Subjective complaints of pain are not sufficient. *Toure*, 98 N.Y.2d at 357-58, 774 N.E.2d at 1205, 746 N.Y.S.2d at 873.

"The defendant bears the initial burden of 'establish[ing] a prima facie case that plaintiff's injuries were not serious;' thereafter, the burden 'shift[s] to plaintiff to come forward with sufficient evidence to overcome defendant's motion by demonstrating that she [or he] sustained a serious injury within the meaning of the No-Fault Insurance Law.'" *Bakhshi v. McCleod-Wilson*, No. 03-CV-5592 (FB), 2006 U.S. Dist. LEXIS 58305 at *7, 2006 WL 2403332 (E.D.N.Y. Aug. 18, 2006) (quoting *Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57, 591 N.E.2d 1176, 582 N.Y.S.2d 990 (1992) (citations omitted)); *see also Zitny v. Mancini*, No. 17 Civ. 3190 (NSR), 2020 U.S. Dist. LEXIS 240844 (S.D.N.Y. Dec. 22, 2020); *Kang v. Romeo*, No. 18-CV-4033 (ARR)(SMG), 2020 U.S. Dist. LEXIS 147332, 2020 WL 4738947, at *8 (E.D.N.Y. Aug. 14, 2020).

"A defendant may satisfy this burden by providing a physician's report that concludes, based upon objective evidence, that the plaintiff either has no injuries or has recovered from them." *Brusso v. Imbeault*, 699 F. Supp. 2d 567, 576 (W.D.N.Y. 2010). A defendant may rely on unsworn reports from plaintiff's physicians or sworn affidavits or affirmations by the defendant's retained physicians. *Evans v. United States*, 978 F. Supp. 2d 148, 163 (E.D.N.Y. 2013) (citing *Thomas v. O'Brien*, No. 08-CV-3250 (RLM), 2010 U.S. Dist. LEXIS 17364, 2010 WL 785999, at *7 (E.D.N.Y. Feb. 26, 2010)).

"The burden then shifts to the plaintiff to come forward with objective evidence that she suffered a serious injury within the meaning of the no-fault law." *Black v. United States*, No. 1:17-cv-01054, 2020 U.S. Dist. LEXIS 51042, 2020 WL 1435092, at *4 (W.D.N.Y. Mar. 24, 2020) (citing *Brusso*, 699 F. Supp. 2d at 576). Plaintiff's subjective complaints of pain, without more, are insufficient to satisfy this burden. *Bass v. Hout,* 13 Civ. 8516 (ER), 2019 U.S. Dist. LEXIS 209206, 2019 WL 6527944, at *4 (S.D.N.Y. Dec. 4, 2019). "Such objective proof can include 'an expert's designation of a numeric percentage of a plaintiff's loss of range of motion' or 'an expert's qualitative assessment of a plaintiff's condition,' so long as the qualitative assessment is objective and 'compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function or system.'" *Id.* (quoting *Toure*, 98 N.Y.2d at 774 N.E.2d at 1200. "'As long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied 'notwithstanding some contrary probative evidence.'" *Evans*, 978 F. Supp. 2d at 163 (quoting *Rivera v. United States*, No. 10 Civ. 5767(MHD), 2012 U.S. Dist. LEXIS 108321, 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012)).

Defendants argue that Plaintiff cannot establish he has suffered a serious injury. According to Defendants, Plaintiff alleges that he suffered a serious injury because, as a result of that accident, he experienced a permanent consequential limitation of a body organ or member, a significant limitation of use of a body function or system, and a medically determined injury which prevented him from performing substantially all of his customary daily activities for at least 90 out of the 180 days following the accident. Plaintiff has alleged the following bodily injuries, in his Responses to Interrogatories: aggravation of a pre-existing injury to the lumbar

spine; disc herniations at L4-L5, C2-C3, C3-C4, C5-C6 and C6-C7; and disc bulges at L3-L4 and L5-S1.[1] Backis Dec., Exhibit C.

Defendants argue that the plain language of §5102(d) does not define the soft tissue disc bulges and herniations alleged by Plaintiff in this case a "serious" injury. Furthermore, there is no medical evidence that would permit a jury to find that the soft tissue injuries alleged by Plaintiff constitute a "serious injury" under any category of §5102(d). Defendants contend that the medical evidence, as well as Plaintiff's own assertions, establish that Plaintiff has not suffered a serious injury, and therefore, a grant of summary judgment is proper.

### A. Permanent Loss of Use

To succeed on a claim of permanent loss of use of a body organ, member, function, or system, a plaintiff must show "total loss of use." *Jung v. Kelly*, 16-CV-6097 (PK), 2020 U.S. Dist. LEXIS 223466 (E.D.N.Y. Nov. 30, 2020) (quoting *Oberly v. Bangs Ambulance Inc*., 96 N.Y.2d 295, 297, 751 N.E.2d 457, 727 N.Y.S.2d 378 (N.Y. 2001)). "Permanent injuries already in existence at the time of the car accident will not qualify as 'serious injuries.'" *Jones v. United States*, 408 F. Supp. 2d 107, 119 (E.D.N.Y. 2006) (citing *Tornatore v. Haggerty*, 307 A.D.2d 522, 763 N.Y.S.2d 344 (3d Dept. 2003)). "[A] bulging disc is not evidence of a serious injury in the absence of objective evidence of the extent of the alleged physical limitations resulting from the injury and its duration." *Young Sung Lee v. Garvey*, 718 F. App'x 11, 15 (2d Cir. 2017) (quoting *Little v. Locoh*, 71 A.D.3d 837, 897 N.Y.S.2d 183, 184 (N.Y. App. Div. 2010), cert. denied, 139 S. Ct. 209, 202 L. Ed. 2d 124 (2018)); *see also Gualtieri v. Farina*, 283 F. Supp. 2d

---

[1] Certain medical records contained in Exhibit H as well as medical records from emergency room visits in Exhibit L relate to head injuries complained of by Plaintiff, however, Plaintiff has not identified any head injuries as constituting serious injuries for which he is seeking compensation and therefore those records are not considered for purposes of this motion.  The Court notes that Plaintiff was represented by counsel at the time the interrogatory responses identifying Plaintiff's claimed injuries were prepared. *See* Backis Dec., Exhibit C.

917, 925 (S.D.N.Y. 2003) ("herniated or bulging discs do not per se meet the statutory threshold of serious physical injury," without "objective evidence of the extent or degree of the alleged physical limitations resulting from the injuries and their duration.") (quoting *Rose v. Furgerson*, 281 A.D.2d 857, 859, 721 N.Y.S.2d 873 (N.Y. App. Div. 2001); *Noble v. Ackerman*, 252 A.D.2d 392, 394, 675 N.Y.S.2d 86 (N.Y. App. Div. 1998)); *Mulligan v. City of N.Y.*, 120 A.D.3d 1155, 993 N.Y.S.2d 24, 26 (N.Y. App. Div. 2014)(same).

The medical evidence submitted by Defendants is sufficient to meet its initial burden on summary judgment. *See Kearse v. New York City Transit Auth.*, 16 A.D.3d 45, 49-50, 789 N.Y.S.2d 281, 285 (2005).  Defendants' medical expert has opined that Plaintiff was examined on October 12, 2017 by spinal surgeon Yong Kim, M.D.  Backis Dec., Exhibit F.  Dr. Kim's examination report states that the MRl studies of the cervical and lumbar regions of Plaintiff's spine, which were performed less than one week after the accident, revealed degenerative disc disease and no acute disc herniations. Backis Dec., Exhibit F, p.7.  Based upon his examination, Dr. Kim's opinion was that Plaintiff sustained cervical and lumbar strains as a result of the accident, which have resolved.  *Id.; see Boyarski v. Karczewski*, No. 17-CV-6282 FPG, 2019 U.S. Dist. LEXIS 137533, 2019 WL 3816560, at *3 (W.D.N.Y. Aug. 14, 2019) (determining that initial burden was established by physician reports concluding from post-accident MRIs that plaintiff's injuries were degenerative, as well as evidence that plaintiff complained of arthritic pain before the accident and did not report pain to treating doctors on the day after the accident); *Gay v. Cevallos*, No. 10 Civ. 949 (LMM), 2011 U.S. Dist. LEXIS 53244, 2011 WL 2015528, at *3, *5-6 (S.D.N.Y. May 17, 2011) (finding initial burden satisfied by defendant doctors' determination that plaintiff's post-accident MRIs and physical examination revealed only degenerative disc disease and long-standing pathology); *Kerr v. Klinger*, 71 A.D.3d 593, 896

N.Y.S.2d 868, 868-69 (N.Y. App. Div. 2010) ("Defendant established her prima facie entitlement to summary judgment by submitting evidence, including the affirmed reports of a radiologist, who, upon reviewing the MRI films taken after plaintiff's accident, concluded that the disc bulges and/or herniations revealed therein were the result of degenerative disc disease and not caused by the automobile accident at issue").

Defendants have also provided Plaintiff's own testimony indicating his alleged injuries did not prevent him from doing any of his usual activities in the six months after the subject accident, even though he had subjective complaints of pain.  Def. Rule 56.1 Stmt. at ¶ 10. However, this does not end the inquiry. It merely shifts the burden to Plaintiff to submit objective medical evidence that raises a genuine issue of fact regarding this issue. *See Toure*, 98 N.Y.2d at 352.

Plaintiff has failed to submit such evidence. None of the doctors seen by Plaintiff have concluded Plaintiff has suffered a permanent injury.  Rather, the weight of the medical evidence before the Court indicates that Plaintiff's symptoms were the result of degenerative disc disease. *See, e.g.,* Backis Dec., Exhibits R, N.

### B.  Significant Limitation of Use of a Body Function

A "significant limitation of use of a body function does not require permanence, but instead requires a fact finding on the issue of whether the dysfunction is important enough to reach the level of significance." *Jones*, 408 F. Supp. 2d at 119 (quoting *Miller v. Miller*, 100 A.D.2d 577, 578, 473 N.Y.S.2d 513 (N.Y. App. Div. 2d Dep't 1984)). A "minor, mild or slight limitation of use" of a body function or system does not constitute a "significant limitation" under New York law.  *Licari v. Elliott*, 57 N.Y.2d 230, 236, 441 N.E.2d 1088, 455 N.Y.S.2d 570 (1982). As with a claim based on permanency, claims of serious injuries based on the

significance of a plaintiff's limitation must be objectively measured and supported by credible medical evidence. *See Ventra v. United States*, 121 F. Supp. 2d 326, 333-34 (S.D.N.Y. 2000). "A plaintiff's description of his pain and suffering, standing alone without other objective indicia, cannot support a claim of significant limitation." *Jones*, 408 F. Supp. 2d at 119. Additionally, a plaintiff must prove a significant limitation "in both degree and duration." *Gualtieri v. Farina*, 283 F. Supp. 2d 917, 925 (S.D.N.Y. 2003).

Once again, the report of Dr. Kim is sufficient to satisfy Defendants' prima facia case the Plaintiff has not suffered a significant limitation which would qualify as serious injury under the New York no-fault standard, and thus the burden shifts to Plaintiff to establish, through objective evidence, that he has suffered a significant limitation.

The Court finds that Plaintiff has not met his burden of proof to show a significant limitation of use of a body function or system. Dr. Rovner's medical records, as well as the report of Dr. Cordiale, indicate a finding of a diminished range of motion in Plaintiff's lumbar spine. Backis Dec., Exhibit K. In certain circumstance a diminished range of motion could support a finding of a significant limitation, however, the limitation must be significant. *See, e.g., Komar v. Showers*, 227 A.D.2d 135, 136, 641 N.Y.S.2d 643 (N.Y. App. 1st Dept. 1996) (sprains or strains not sufficient to establish serious injury); *Shepley v. Helmerson*, 306 A.D.2d 267, 268, 760 N.Y.S.2d 228 (N.Y. App. 2nd Dept. 2003) (cervical strain and mildly diminished range of motion insufficient to establish significant limitation); *Shinn v. Catanzaro*, 1 A.D.3d 195, 197, 767 N.Y.S.2d 88 (App. Div. 1st Dept. 2003) (defendant met her initial burden by submitting sworn affirmation of examining chiropractor who concluded that neither plaintiff was seriously nor permanently injured). Regarding the cervical-spine range-of-motion test, "[w]hile there is no set percentage for determining whether a limitation in range of motion is sufficient to

establish serious injury, [ ] cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes." *Booth v. Melville*, No. 14 Civ. 7022 (CM), 2015 U.S. Dist. LEXIS 160381, 2015 WL 7730931, at *11 (S.D.N.Y. Nov. 24, 2015) (internal citations omitted).  Based upon the range of motion reports prepared by Plaintiff's physical therapists, as well as a report prepared by Dr. Sidhwani (Backis Dec., Exhibit H),  Plaintiff's range of motion limitations fall below this threshold.

The range of motion test conducted by Dr. Rovner indicates a greater range of motion limitation than any of the other medical records provided.  However, Plaintiff's own testimony, as well as the findings of doctors Vernon, Goldstein, Agastin and Camissa and the physical therapist cast doubt on the veracity of Dr. Rovner's report. First, Plaintiff testified that Dr. Rovner recommended surgery to Plaintiff for his own financial gain.  Next, while each of the reports notes some diminished range of motion, none come close to the limitations noted by Dr. Rovner.  In addition, Defendants' expert, Dr. Kim, notes in his report that the range of motion test he performed indicated a greatly reduced range of motion, however, "of note is that when the claimant was not undergoing actual range of motion testing, and was having casual conversation with me, he had much improved range of cervical and lumbar motion, with spontaneous movements well beyond what was measured during the actual range of motion examinations of the cervical and lumbar spine."  Finally, in an action involving soft tissue injuries, like this one, a plaintiff cannot raise a triable issue as to whether he sustained a permanent serious injury when there is not a recent examination.  *See, e.g., Kim v. Rodriguez*, No. 14 Civ. 3799 (AMD)(AKT), 2016 U.S. Dist. LEXIS 153246, 2016 WL 6581230, at *10 (E.D.N.Y. Nov. 4, 2016); *Rabolt v. Park*, 50 A.D.3d 995, 858 N.Y.S.2d 197 (2d Dep't 2008).  As noted above, Plaintiff here has failed to provide any evidence in opposition to Defendants' motion for summary judgment and

the Court has reviewed the medical records provided by Defendants and not located a recent exam discussing Plaintiff's range of motion.  The exams discussed above are all from 2015,

Here, the issue is clouded further by Plaintiff's pre-existing disability related to a fall in the 1970s as well as an accident in 1992 which left Plaintiff disabled as a result of a back injury. None of the consultation reports address the extent to which any diminished range of motion may be attributed to the prior injuries.  Thus the unsupported statements from Plaintiff's medical providers are insufficient to establish a serious injury. *See Dabiere v. Yager*, 297 A.D.2d 831, 748 N.Y.S.2d 38, 39 (3d Dep't 2002) ("[I]n the absence of objective evidence establishing the aggravation as opposed to the underlying condition, plaintiffs' submission is insufficient to demonstrate serious injury under the permanent loss of use, consequential limitation of use or significant limitation of use categories."); *Montgomery v. Pena*, 19 A.D.3d 288, 798 N.Y.S.2d 17, 18 (N.Y. App. Div. 2005) (defendants were entitled to summary judgment where plaintiff's expert failed to give an "objective basis" for the conclusion that plaintiff's alleged limitations resulted from the accident sued upon, rather than from a prior fall, a prior car accident, or certain preexisting degenerative conditions). Given that Plaintiff "has provided no objective evidence addressing the pre-existing injuries," he falls short of his burden to rebut Defendants' prima facie case regarding his back injury. *Evans,* 978 F. Supp. 2d at 172; *see also Kim v. Rodriguez*, No. 14 Civ. 3799 (AMD)(AKT), 2016 U.S. Dist. LEXIS 153246, 2016 WL 6581230, at *10 (E.D.N.Y. Nov. 4, 2016).

Based upon the Court's review of the evidence, Plaintiff has not shown significant limitations with respect to his spine that were caused by the November 2014 accident, and failed to even proffer an expert witness who was qualified to testify as to Plaintiff's spinal injuries.

Moreover, the Court credits the testimony of Dr. Kim that Plaintiff's spinal injuries from the accident were not significant.  *See* Backis Dec., Exhibit F.


C.  The 90/180-Day Category

To succeed on this claim, Plaintiff must demonstrate that he was restricted in performing substantially all of the material acts that constitute his usual and customary activities for ninety (90) out of the one hundred and eighty (180) days following injury. N.Y. Ins. Law § 5102(d). "Substantially all" has been construed to mean that the injured person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment. *Licari,* 57 N.Y.2d at 236; *see also Jung*, 2020 U.S. Dist. LEXIS 223466.  "[T]he ninety days requirement must be taken literally." *Kang*, 2020 U.S. Dist. LEXIS 147332, 2020 WL 4738947 at *32 (internal quotations omitted, alteration in original).  A plaintiff is required to present more than personal self-serving testimony as to the inability to perform his usual and customary activities. *Cullum v. Washington*, 227 A.D.2d 370, 642 N.Y.S.2d 86 (2d Dep't 1996).

Moreover, the statute is unequivocal that the period of disability must be for not less than ninety (90) days during the one hundred eighty (180) days immediately following the occurrence of the injury or impairment. *Licari*, 57 N.Y.2d at 236. "The Legislature has made it abundantly clear that disability falling within this threshold period must be proved along with the other statutory requirements in order to establish a prima facie case of serious injury." *Id.*

Plaintiff's evidentiary showing is wholly deficient.  Plaintiff has failed to provide a shred of evidence indicating that he has been unable to perform his usual and customary activities. Indeed, Plaintiff's own testimony contradicts any claim that he was unable to perform substantially all activities.  Plaintiff testified that his alleged injuries did not prevent him from

doing any of his usual activities in the 6 months after the subject accident, even though he had subjective complaints of pain. *Id* at ¶ 10. Plaintiff only complained that his alleged injuries completely prevented him from playing basketball, bowling and having a relationship with a woman. *Id* at ¶ 22. However, Plaintiff testified that he had not bowled or played basketball for years before the subject accident. *Id* at ¶ 23. He also testified that he has continued to travel to Atlantic City, New Jersey and Foxwood, Connecticut each weekend to gamble. *Id* at ¶ 24.

Absent more, this is not enough to defeat summary judgment. Plaintiff has provided no evidence that he was unable to perform his regular daily activities. *See, e.g., Gualtieri*, 283 F. Supp. 2d at 925 ("her self-serving testimony that she can no longer clean her house or hold her baby for long periods of time, is unsubstantiated"); *Arrowood v. Lowinger,* 294 A.D.2d 315, 742 N.Y.S.2d 294 (1st Dep't 2002) (plaintiff's unsubstantiated claim that he was unable to do household chores is insufficient to show serious injury in the 90/180-day category); *Gaddy v. Eyler*, 79 N.Y.2d 955, 958, 591 N.E.2d 1176, 582 N.Y.S.2d 990 (1992) (plaintiff failed to establish serious injury in 90/180-day category where she submitted no evidence to support her contention that her household and recreational activities were curtailed); *Abrahamson v. Premier Car Rental of Smithtown*, 261 A.D 2d 562, 691 N.Y.S.2d 83 (2d Dep't 1999)(Plaintiff's own testimony that he suffers from back pain and that he was unable to have sexual relations with his wife or to care for his children for three months after the accident insufficient to defeat summary judgment).

Accordingly, Defendants have sustained their burden of demonstrating that the Plaintiff was not prevented from performing "substantially all" of his daily activities during 90 out of 180 days following the occurrence of the injury and Plaintiff has failed to rebut this evidence.

In light of the evidence presented by Defendants establishing their prima facie case that no serious injury occurred and Plaintiff's failure to present objective evidence from which a jury could find that he sustained a serious injury as a result of the accident in November 2014, the undersigned respectfully recommends that Defendants' motion for summary judgment be granted.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*. *Pro se* Plaintiff Noel Ciappetta must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Counsel for Defendants is directed to serve a copy of this Order upon *pro se* Plaintiff forthwith and file proof of service on ECF.

Dated: Central Islip, New York
January 22, 2021

_____/s/_____
ARLENE ROSARIO LINDSAY
United States Magistrate Judge